Joseph Schramm, III
FISHERBROYLES, LLP
100 Overlook Center, Second Floor
Princeton, New Jersey 08540
(856) 733-0220
joseph.schramm@fisherbroyles.com

*Attorneys for Plaintiff,*
*Evanston Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY,<br>Ten Parkway North<br>Deerfield, IL 60015 | ) ) ) ) | |
| Plaintiff, | ) ) | Case No: _____ |
| vs. | ) ) ) | |
| NEUROMONITORING TECHNOLOGIES,<br>INC.<br>3060 Washington Rd.<br>Suite 268<br>Glenwood, MD 21738 | ) ) ) ) ) ) | **(Filed Electronically)** |
| and | ) ) | |
| ROBERT PERRO<br>20 19th St.<br>Burlington, NJ 08016 | ) ) ) ) | |
| and | ) ) | |
| DAVID J. NIEDZWIADEK, as<br>Administrator of the Estate of Margaret<br>Mary Niedzwiadek<br>308 Pond Rd.<br>Egg Harbor Township, NJ 08234 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Evanston Insurance Company ("Evanston"), by and through its undersigned counsel, alleges as follows:

## INTRODUCTION

1.      This is a declaratory judgment action brought by Evanston against Neuromonitoring Technologies, Inc. ("NMT"), Robert Perro, and David Niedzwiadek, as Administrator of the Estate of Margaret Mary Niedzwiadek, to determine the parties' rights and obligations under an insurance policy issued by Evanston to NMT.  Specifically, Evanston seeks a judicial declaration that the policy does not afford any coverage for the Underlying Lawsuit brought by Mr. Niedzwiadek against NMT and Mr. Perro, and that Evanston has no duty to defend or indemnify NMT or Mr. Perro in connection with the Underlying Lawsuit.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201 and 2202.  Evanston is an Illinois corporation with its principal place of business in Deerfield, Illinois.  NMT is a Maryland corporation with its principal place of business in Glenwood, Maryland, and conducts business within New Jersey.  Upon information and belief, Mr. Perro is a citizen and resident of New Jersey.  Upon information and belief, Mr. Niedzwiadek is the Administrator of the Estate of Margaret Mary Niedzwiadek, having been so appointed by Burlington County Surrogate's Court, State of New Jersey, and is a citizen and resident of Egg Harbor Township, New Jersey.  Accordingly, there is complete diversity as between Evanston and the Defendants.

3.      The matter in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000).  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Mr. Perro and Mr. Niedzwiadek reside in this judicial district and NMT conducts business in this judicial district.

## PARTIES

5.      Evanston is a corporation organized and existing under the laws of Illinois, with its principal place of business in Deerfield, Illinois.

6.      Upon information and belief, NMT is a Maryland corporation with its principal place of business in Glenwood, Maryland, and regularly conducts business within New Jersey.

7.      Upon information and belief, Mr. Perro is a citizen and resident of New Jersey.

8.      Upon information and belief, Mr. Niedzwiadek is the Administrator of the Estate of Margaret Mary Niedzwiadek, having been so appointed by Burlington County Surrogate's Court, State of New Jersey, and is a citizen and resident of Egg Harbor Township, New Jersey.

## FACTUAL ALLEGATIONS

### The Underlying Lawsuit

9.      On or about October 20, 2015, David J. Niedzwiadek, as Administrator of the Estate of Margaret Mary Niedzwiadek, initiated a lawsuit captioned *Niedzwiadek v. Droney, et al.*, Case No. L-000094-16, by filing a complaint (the "Underlying Lawsuit").  Mr. Niedzwiadek filed an Amended Complaint on or about June 23, 2016 (the "Underlying Complaint").  The Underlying Lawsuit is currently pending in the Superior Court of New Jersey, Atlantic County.  A true and correct copy of the Underlying Complaint is attached hereto as Exhibit A.

10.      In short, the Underlying Complaint alleges medical malpractice that purportedly resulted in the death of Margaret Mary Niedzwiadek on December 5, 2013, following an anterior

cervical discectomy and fusion she underwent on October 22, 2013.  *See* Underlying Compl. ¶¶ 21, 48.

11.     The Underlying Complaint names Mr. Perro and NMT as defendants, among various other defendants who allegedly rendered services in connection with Ms. Niedzwiadek's procedure.

12.     Specifically, the Underlying Complaint alleges that Mr. Perro, an electrodiagnostic neuromonitoring technician, monitored Ms. Niedzwiadek's somatosensory evoked potentials ("SEPs") during the procedure, but allegedly failed to communicate the suboptimal quality of SEP signals to the spinal surgeon, Dr. James Lowe, or to the orthopedic spinal surgeon, Dr. Joseph Zerbo.  Underlying Compl. ¶¶ 27-30.

13.     Immediately following Ms. Niedzwiadek's procedure, she was transferred to the post anesthesia care unit and then to the progressive care unit where she remained unresponsive. *Id.* ¶¶ 31-38.

14.     The day after the procedure, Ms. Niedzwiadek was transferred to the intensive care unit, but her neurological status did not improve.  *Id.* ¶¶ 40-44.

15.     On November 8, 2013, Ms. Niedzwiadek was transferred to long term acute care where she died on December 5, 2013.  *Id.* ¶¶ 46-47.

16.      The Underlying Complaint alleges negligence against Mr. Perro (Count II) and negligence against NMT (Count III).

17.     With respect to Mr. Perro, the Underlying Complaint specifically alleges, among other things, that Mr. Perro "failed to exercise the degree of care and skill required in the care and treatment of" Ms. Niedzwiadek by "negligently fail[ing] to inform Dr. Lowe, Dr. Zerbo,

and/or other healthcare providers regarding the suboptimal nature of the SEP responses obtained from Margaret Niedzwiadek." *Id.* ¶ 53(f).

18.     With respect to NMT, the Underlying Complaint specifically alleges, among other things, that NMT "failed to exercise the degree of care and skill required in the care, treatment, and intraoperative neuromonitoring of Margaret Niedzwiadek" by "negligently fail[ing] to inform Dr. Lowe, Dr. Zerbo, Dr. Droney, CRNA Deiter, and/or other healthcare providers regarding the suboptimal nature of the SEP responses obtained from Margaret Niedzwiadek." *Id.* ¶ 55(f).

19.     Evanston currently is providing a defense to Mr. Perro and to NMT in connection with the Underlying Lawsuit pursuant to a professional liability insurance policy discussed below.

### NMT's Insurance Applications

20.     On May 22, 2014, NMT completed and submitted an Application for Specified Medical Professions for Professional Liability Insurance (the "2014 Application").  A true and correct copy of the 2014 Application is attached hereto as Exhibit B.

21.     The 2014 Application was completed and executed by NMT's President, Richard Mathabel, on NMT's behalf at its principal office in Glenwood, Maryland.

22.     Question 7. of the 2014 Application concerns "Applicant History/Claims."  One subpart of that question asks: "Are you aware of any circumstances which may result in a malpractice claim or suit being made or brought against you or any of your employees?"  *See* 2014 Application 7.e.

23.     In response to question 7.e., NMT answered "No."

24.     Prior to the signature line, the 2014 Application further states:

I/We warrant to the Insurer, that I understand and accept . . . that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated herein, should the Insurer evidence its acceptance of this application by issuance of a policy.

25.     On May 4, 2015, NMT completed and submitted an Application for Specified Medical Professions for Professional Liability Insurance (the "2015 Application").  A true and correct copy of the 2015 Application is attached hereto as Exhibit C.

26.     The 2015 Application was completed and executed by NMT's President, Richard Mathabel, on NMT's behalf at its principal office in Glenwood, Maryland.

27.     Question 7. of the 2015 Application concerns "Applicant History/Claims."  One subpart of that question asks: "Are you aware of any circumstances which may result in a malpractice claim or suit being made or brought against you or any of your employees?"  *See* 2015 Application 7.e.

28.     In response to question 7.e., NMT answered "No."

29.     Prior to the signature line, the 2015 Application further states:

I/We warrant to the Insurer, that I understand and accept . . . that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated herein, should the Insurer evidence its acceptance of this application by issuance of a policy.

## The Evanston Policy

30.     Pursuant to NMT's 2015 Application, Evanston issued to NMT Specified Medical Professions Professional Liability Insurance Policy No. SM907846 (the "Policy") for the period effective from July 1, 2015, to July 1, 2016.  A true and correct copy of the Policy is attached hereto as Exhibit D.

31.     On June 24, 2015, Evanston mailed a copy of the Policy to NMT's surplus lines insurance broker, All Risks, Ltd. in Hunt Valley, Maryland.  All Risks, Ltd. in turn sent the Policy to NMT at its principal office in Glenwood, Maryland.

32.     The Policy defines a "Claim," in pertinent part, as the Insured's receipt of "[t]he service of suit . . . against the Insured seeking Damages."  *See* Policy, Specified Medical Professions Professional Liability Insurance Coverage Part, Definitions, B. Claim.

33.     The Policy defines "Insured," in pertinent part, as "[t]he Named Insured which is herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations" and "[a]ny past or current principal, partner, officer, director, Employee or Volunteer Worker of the Named Insured solely while acting on behalf of the Named Insured and within the scope of their duties as such . . . ."  *See* Policy, Specified Medical Professions Professional Liability Insurance Coverage Part, The Insured, A.-B.

34.     Because Item 1. of the Policy's Declarations identifies Defendant "Neuromonitoring Technologies,"  NMT is an Insured under the Policy.

35.     The Policy defines "Employee," in pertinent part, as "any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service."  *See* Policy, Specified Medical Professions Professional Liability Insurance Coverage Part, Definitions, E. Employee.

36.     Upon information and belief, Mr. Perro was an Employee of NMT during the period of time at issue.  As such, Mr. Perro qualifies as an Insured under the Policy.

37.     The Policy provides that "the term Company refers to the insurance company providing this insurance [i.e., Evanston]."  *See* Policy, Common Policy Conditions.

38.     The Common Policy Conditions provide, among other things:

By acceptance of this policy, the Insureds agree as follows:
1.  That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and
2.  That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

*See* Policy, Common Policy Conditions, B. Representations.

39.     The Common Policy Conditions also provide:

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect [sic] a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy.

*See* Policy, Common Policy Conditions, E. Changes.

40.     The Policy's Professional Liability Coverage Part, in pertinent part, provides:

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Professional Personal Injury:

1.  By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by an Insured; or
2.  By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by a natural person, who is not and shall not be an Insured hereunder, and through whose acts the Insured controls the provider-patient relationship as of the time of such act, error or omission;

*provided*:

    **a.**  The act error or omission happens during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

    **b.**  *Prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.*

*See* Policy, Specified Medical Professions Professional Liability Insurance Coverage Part, Insuring Agreement, A. Professional Liability and Claims Made Clause (emphasis added).

### NMT Terminated Mr. Perro for Gross Negligence

41.    As referenced above, Ms. Niedzwiadek's procedure took place on October 22, 2013.

42.    Less than 24 hours after Ms. Niedzwiadek's procedure, NMT terminated Mr. Perro's employment, and his last day of work with NMT was October 23, 2013.

43.    In connection with Mr. Perro's termination, Mr. Perro filed on November 3, 2013, a claim for unemployment compensation. *See* Referee's Decision/Order (Exhibit E).

44.    After Mr. Perro's claim was denied by the Referee due to "willful misconduct," Mr. Perro appealed the Referee's decision and order. *See* Petition for Appeal (Exhibit F).

45.    In response to Mr. Perro's appeal, NMT advised the Unemployment Compensation Board of Review (the "Board") that Mr. Perro was "terminated for gross negligence." *Id.*

46.    The Board affirmed the decision of the Referee. *See* Order (Exhibit G).

### COUNT I

### Declaratory Judgment that the Policy does Not Cover the Underlying Lawsuit
### Due to the Insured's Prior Knowledge of the Likelihood of a Claim

47.    Evanston repeats and incorporates herein by reference the allegations in paragraphs 1 through 46.

48.     As set forth above, the Policy's Professional Liability Coverage Part covers certain Claims arising out of certain acts, errors or omissions *provided that* prior to the effective date of the Policy, "the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely."

49.     Both NMT and Mr. Perro had knowledge prior to the Policy's inception (July 1, 2015) of the acts, errors, omissions, facts, circumstances, situation, or incident that gave rise to the Underlying Lawsuit.

50.     Prior to submitting its application for the Policy and prior to the effective date of the Policy, NMT and Mr. Perro had knowledge of the facts and circumstances surrounding the procedures performed on Ms. Niedzwiadek and her subsequent death.

51.     NMT's and Mr. Perro's knowledge of the facts and circumstances surrounding the procedures performed on Ms. Niedzwiadek and her subsequent death would lead a reasonable person in either NMT's or Mr. Perro's position to conclude that a Claim was likely, if not inevitable, regardless of whether NMT or Mr. Perro ultimately might face liability or might successfully defend that Claim.

52.     The Policy provisions that address Claims and knowledge of circumstances that may give rise to a Claim are not limited to Claims for which an Insured ultimately is found liable.  Rather, these Policy provisions apply even to Claims that are successfully defended by NMT and/or Mr. Perro as Evanston expects will be the ultimate outcome of the Underlying Lawsuit.

53.     NMT and Mr. Perro had knowledge of the facts and circumstances surrounding the procedures performed on Ms. Niedzwiadek and her subsequent death, and the likelihood of

an ensuing Claim as of October 23, 2013, when NMT terminated Mr. Perro for "gross negligence" in connection with his provision of professional services during Ms. Niedzwiadek's surgery.

54.     A reasonable person in either NMT's or Mr. Perro's position would expect that a Claim was likely following Ms. Niedzwiadek's death.  NMT's assertion in a public record document that Mr. Perro had been terminated for "gross negligence" immediately following Ms. Niedzwiadek's surgery substantially increased the likelihood that any Claim asserted on behalf of Ms. Niedzwiadek against any participants in the surgery would be asserted against NMT and/or Mr. Perro.

55.     Because of the circumstances surrounding Ms. Niedzwiadek's procedure, Ms. Niedzwiadek's death on December 5, 2013, NMT's swift termination of Mr. Perro for "gross negligence," and Mr. Perro's resulting claim for unemployment compensation that was denied due to "willful misconduct," any reasonable person in NMT's or Mr. Perro's position would have concluded that an ensuing Claim was highly likely.

56.     Despite their knowledge of such facts and circumstances, NMT completed and submitted the 2014 Application and the 2015 Application, responding in both such applications that it was **not** "aware of any circumstances which may result in a malpractice claim or suit being made or brought against [NMT] or any of [its] employees."

57.     Evanston relied upon and incorporated into the Policy the 2015 Application, which Evanston deemed material to its issuance of the Policy.

58.     Because both NMT and Mr. Perro had such knowledge before the Policy incepted, the Policy does not cover the Underlying Lawsuit, and Evanston has no duty to defend or indemnify them in connection with the Underlying Lawsuit.

## COUNT II

### Reservation of Rights

59.     Evanston repeats and incorporates herein by reference the allegations in paragraphs 1 through 58.

60.     In addition to seeking a declaratory judgment that there is no coverage under the Policy for the Underlying Lawsuit, Evanston continues to reserve its right to limit or to decline coverage under the Policy for the Underlying Lawsuit pursuant to all other provisions of the Policy and applicable law.

### PRAYER FOR RELIEF

WHEREFORE, Evanston prays that this Honorable Court order, adjudge and decree the following relief:

A.     A judicial declaration that there is no coverage under the Policy for the Underlying Lawsuit and that Evanston has no obligation to defend Mr. Perro or NMT with respect to the Underlying Lawsuit or to indemnify Mr. Perro or NMT for any loss that they may incur as a result of the Underlying Lawsuit;

B.     An award to Evanston of its costs and expenses incurred in this matter, including its reasonable attorneys' fees; and

C.     Such other and further relief as the Court deems just, necessary and proper.

Dated: July 10, 2018

By: s/ Joseph Schramm, III
    Joseph Schramm, III
    FISHERBROYLES, LLP
    100 Overlook Center, Second Floor
    Princeton, New Jersey 08540
    (856) 733-0220
    joseph.schramm@fisherbroyles.com

    *Attorneys for Plaintiff,*
    *Evanston Insurance Company*

*Of Counsel*

LOSS, JUDGE & WARD, LLP
Sean M. Hanifin, Esq.
Jason C. Reichlyn, Esq.
Hamilton Square
600 14th Street, NW
Suite 450
Washington, DC 20005
Tel:    (202) 778-4060
Fax:    (202) 778-4099
shanifin@ljwllp.com
jreichlyn@ljwllp.com

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

The matter in controversy is not the subject of any other action in any other court, or of

any pending arbitration or administrative proceeding, except for the following pending action:

- *David J. Niedzwiadek, as Administrator of the Estate of Margaret Mary Niedzwiadek v. Timothy J. Droney, M.D.; Jessica J. Deiter, C.R.N.A.; AtlantiCare Regional Medical Center, Inc,; AtlantiCare Health System, Inc.; James G. Lowe, M.D.; Joseph R. Zerbo, D.O.; Lowe-Greenwood-Zerbo Spinal Associates, P.A.; Craig J. Anmuth, D.O.; Robert Perro; Bacharach Institute for Rehabilitation; Neuromonitoring Technologies, Inc; JOHN DOE #1-10 (fictitious name of individual who provided care to Mary Niedzwiadek); and ABC Corp. 1-10 (fictitious name of any individual, corporation, partner, sole proprietorship, or other entity responsible for the above defendants providing care to Niedzwiadek);*
  Case No. L-000094-16 (Superior Court of New Jersey, Atlantic County, Law Division)


Dated: July 10, 2018

By: s/ Joseph Schramm, III
Joseph Schramm, III
FISHERBROYLES, LLP
100 Overlook Center, Second Floor
Princeton, New Jersey 08540
(856) 733-0220
joseph.schramm@fisherbroyles.com

*Attorneys for Plaintiff,*
*Evanston Insurance Company*

*Of Counsel*

LOSS, JUDGE & WARD, LLP
Sean M. Hanifin, Esq.
Jason C. Reichlyn, Esq.
Hamilton Square
600 14th Street, NW
Suite 450
Washington, DC 20005
Tel:    (202) 778-4060
Fax:    (202) 778-4099
shanifin@ljwllp.com
jreichlyn@ljwllp.com