[Dkt. No. 52]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NEUROMONITORING TECHNOLOGIES, INC., ROBERT PERRO, and DAVID J. NIEDZWIADEK, as Administrator of the Estate of Margaret Mary Niedzwiadek,<br><br>Defendants. | Civil No. 18-11497(RMB/KMW)<br><br>**OPINION** |

APPEARANCES:

FISHERBROYLES, LLP
By: Joseph Schramm, III, Esq.
100 Overlook Center, Second Floor
Princeton, NJ. 08540
    Counsel for Plaintiff Evanston Insurance Company

Dykema Gossett PLLC
By: Sean M. Hanifin, Esq.; Jason C. Reichlyn, Esq.
1301 K Street NW, Suite 1100 West
Washington, DC 20005
    Counsel for Plaintiff Evanston Insurance Company

FOWLER HIRTZEL MCNULTY & SPAULDING LLP
By: Dennis Chow, Esq.; Matthew D. Vodzak, Esq.
2000 Market Street, Suite 550
Philadelphia, PA 19103
    Counsel for Defendant Neuromonitoring Technologies, Inc.

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

On July 10, 2018, Plaintiff Evanston Insurance Company's ("Plaintiff" or "Evanston") commenced this action, seeking a declaratory judgment that Plaintiff had no duty to defend or indemnify Defendant Neuromonitoring Technologies, Inc. ("Defendant" or "NMT") in the underlying medical malpractice lawsuit filed in the Superior Court of New Jersey, Atlantic County, on October 20, 2015, captioned Niedzwiadek v. Droney, et al., Case No. L-000094-16 (the "Underlying Lawsuit").  After settling the Underlying Lawsuit, Plaintiff filed an Amended Complaint, on September 26, 2019 [Dkt. No. 51], seeking repayment of the settlement and legal fees expended on Defendant's behalf. Now, this matter comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. No. 52].  For the reasons set forth herein, Defendant's Motion to Dismiss will be **GRANTED IN PART**, and **DENIED IN PART.**

I.   **FACTUAL BACKGROUND**

This matter arises out of a dispute regarding Evanston's duty indemnify and defend NMT against the claims asserted (and now settled) in the Underlying Lawsuit.  As alleged in the Underlying Lawsuit, Margaret Mary Niedzwiadek (the "Patient") underwent a surgical procedure on October 22, 2013.  During that procedure, Robert Perro, an employee of NMT, monitored the Patient's Somatosensory Evoked Potentials ("SEPs"), but allegedly failed to

communicate the suboptimal quality of SEP signals to the spinal surgeon or to the orthopedic surgeon. It was alleged that as a result of Mr. Perro's actions, the Patient never awoke from surgery and, ultimately, died on December 5, 2013. On October 20, 2015, Defendant David J. Niedzwiadek, as Administrator of the Patient's Estate, commenced the Underlying Lawsuit against Mr. Perro, NMT, and others. Pursuant to its obligations under the Medical Professional Liability Insurance Policy (the "Policy"), Evanston agreed to render a defense to Mr. Perro and NMT.

During the discovery process in the Underlying Lawsuit, Evanston came to believe that NMT, at the time it applied for the Policy, had misrepresented its knowledge about the risk of a claim stemming from the Patient's death. Specifically, Plaintiff alleges that it received documentation establishing that NMT terminated Mr. Perro's employment on October 23, 2013, less than 24 hours after the Patient's surgery, for "gross negligence" and "willful misconduct" in relation to his actions during the Patient's procedure. In fact, as early as December 2, 2013, Richard Mathabel, NMT's President, stated in opposition to Mr. Perro's claim for unemployment benefits that Mr. Perro had been "terminated for Gross Negligence."

In an April 22, 2014 letter to the Maryland Division of Unemployment Insurance, Richard Mathabel, NMT's President, elaborated as follows:

> Mr. Perro provided intraoperative neurological monitoring during surgery [] as an employee of Neuromonitoring Technologies, Inc. at Atlantic City Medical Center, in Atlantic City, New Jersey on 10-22-[13]. His responsibilities during this surgery were to inform the surgeon and the consulting neurologist with any changes that occurred from the baseline readings of the patient that Mr. Perro had obtained. This patient had a very adverse outcome from the surgery as they never regained consciousness, and subsequently passed away. After reviewing the case, it was determined that Mr. Perro did not inform the surgeon, nor the consulting Neurologist of notable changes.  After this incident Mr. Perro was a liability to Neuromonitoring Technologies, Inc. and I was unable to continue his employment... This was a clear violation of his employment contract and is considered "gross negligence."

See Richard Mathabel Letter to Maryland Divison of Unemployment Insurance, April 22, 2014 [Dkt. No. 51-15].

Despite NMT's admissions that Mr. Perro was grossly negligent during the Patient's October 2013 surgery, in both the 2014 and 2015 Applications[1] for Specified Medical Professions For Professional Liability Insurance (the "Policy Applications"), Mr. Mathabel answered "no" to the question, "[a]re you aware of any circumstances which may result in a malpractice claim or suit being made or brought against you or any of your employees?" [2]

---

[1] The 2014 Policy Application [Dkt. No. 51-5] and the 2015 Policy Application [Dkt. No. 51-6] were signed and dated May 22, 2014 and May 4, 2015, respectively.

[2] The Policy defines "Claim" as "the Insured's receipt of (1) A written demand for Damages or Professional Services; or (2) The service of suit or institution of arbitration proceedings against the Insured seeking Damages." See Specified Medical Professions Professional Liability Insurance Coverage Part, Definitions, Paragraph B [Dkt. 51-7, at 31].

4

In this matter, Evanston argues that Mr. Mathabel's answers on the Policy Applications were material misrepresentations because, given the circumstances surrounding the Patient's ill-fated procedure and Mr. Perro's swift termination thereafter, "any reasonable person in NMT's ... position would have concluded that an ensuing Claim was highly likely." See Am. Compl., at ¶ 82.

On July 10, 2018, Evanston commenced this action, seeking a declaratory judgment that it had no duty to defend or indemnify NMT in relation to the Underlying Lawsuit. Defendant moved to dismiss Evanston's original complaint for lack of subject matter jurisdiction, arguing that the relevant claims could be more properly addressed and resolved in the context of the related Underlying Lawsuit. This Court denied Defendant's motion, finding that the same exact issues would not be resolved in the Underlying Lawsuit and that discretionary jurisdiction over Plaintiff's claims was appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

While simultaneously disavowing any obligation to defend or indemnify NMT, on June 20, 2019, Evanston settled the Underlying Lawsuit for $1.1 million on behalf of NMT and Mr. Perro. Evanston contends that it settled the lawsuit under pressure from NMT. Specifically, Evanston alleges that NMT threatened to hold Evanston financially responsible if Evanston refused to settle the

5

Underlying Lawsuit and a jury were to return a verdict in excess of policy limits.

After settling the Underlying Lawsuit, Evanston filed the Amended Complaint, seeking repayment of both the settlement and legal fees expended on NMT's behalf. Plaintiff's Amended Complaint asserts claims for a declaratory judgment (Count I); breach of contract (Count II); unjust enrichment (Count III); and subrogation (Count IV). Now, this matter comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

## II.  LEGAL STANDARDS

### A.  *Motion to Dismiss*

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

6

the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

When reviewing a plaintiff's complaint on a motion to dismiss, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

B.   *Choice of Law*

Plaintiff asserts that Maryland's substantive law should apply to the claims in this case, because the contract was negotiated and signed in Maryland and Defendant is based in Maryland. When a choice-of law question exists in a diversity of citizenship action, "a district court must apply the choice-of-law rules of the state in which it sits in order to determine which state's law applies." Chin v. Chrysler LLC, 538 F.3d 272, 279 (3d Cir. 2008)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S.

7

487, 496 (1941)). The Supreme Court of New Jersey has held that "because the law of the place of contract 'generally comport[s] with the reasonable expectations of the parties concerning the principal situs of the insured risk,' that forum's law should be applied 'unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.'" <u>Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.</u>, 134 N.J. 96, 102 (1993). Although the surgery that gave rise to the Underlying Lawsuit occurred in New Jersey, the Policy at issue in this case was contracted in Maryland.  Thus, this Court will apply Maryland law to the substantive issues where relevant.

### III. **ANALYSIS**

In the Motion to Dismiss, Defendant argues that (1) the claim for a declaratory judgment is moot because the Underlying Lawsuit has already been settled; (2) Plaintiff fails to state viable claims for breach of contract or unjust enrichment because Evanston was obligated to make payments under the Policy and made the payments voluntarily; and (3) Plaintiff cannot pursue a claim for subrogation against its own insured under common law or the terms of the Policy.  For the reasons discussed below, Defendant's motion will be granted in part, and denied in part.

8

### *A. Count I: Declaratory Judgement*

In the Motion to Dismiss, Defendant argues that Plaintiff's cause of action seeking declaratory relief is moot because the Underlying Lawsuit has been settled and dismissed, meaning that Evanston is no longer defending or indemnifying NMT in that matter. The Court disagrees that the settlement of the Underlying Lawsuit moots the issue of whether or not Evanston had an obligation to defend or indemnify Defendant in the first place.

"The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Brown v. Phila. Hous. Auth., 350 F.3d 338, 343 (3d Cir.2003)(quoting N.J. Turnpike Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985)). "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007)(quoting In re Surrick, 338 F.3d 224, 230 (3d Cir. 2003)). As articulated by the Third Circuit, a claim is moot when, due to changes in the circumstances of the case, "(1) the issues presented are no longer live, or (2) the parties lack a cognizable interest in the outcome." Brown, 350 F.3d at 343 (internal citation omitted).

The Third Circuit has noted that "[t]he burden of demonstrating mootness is a heavy one." Surrick v. Killion, 449

F.3d 520, 526 (3d Cir. 2006)(internal citation omitted).  To that end, "[a] case is saved from mootness if a viable claim for damages exists." Nat'l Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 490 (3d Cir. 1992)(internal citation omitted). "Even where the amount of damages at issue is minute, a case is not moot so long as the parties have a concrete interest, however small, in the outcome of a litigation." Id.

Although Evanston "acknowledges that a live controversy no longer exists with respect to any continuing defense obligation, there remains a controversy with respect to the $1.1 million settlement amount incurred by Evanston to settle the underlying lawsuit." Pl.'s Opp. Br. [Dkt. No. 54], at 19.  Under analogous circumstances, another court in this district held that where "Plaintiff has a viable claim for damages, and because a declaratory judgment from this Court would determine the monetary obligations of the parties, this case is not moot." Navigators Specialty Ins. Co. v. Scarinci & Hollenbeck, LLC, 2010 WL 1931239, at *5 (D.N.J. May 12, 2010).  Likewise, in this case, this Court finds that there remains an active controversy regarding the monetary obligations of the parties.  Thus, Defendant has not met its "heavy burden" of establishing mootness.

10

### B. *Count II: Breach of Contract*

In the Amended Complaint, Plaintiff attempts to assert two contractual breaches.  First, Plaintiff contends that "NMT breached the Policy by submitting insurance applications containing material misrepresentations and omissions regarding its knowledge of the circumstances which may result in a malpractice claim or suit being made or brought against it or any of its employees." Am. Compl., at ¶ 92.  Second, Plaintiff alleges that "NMT further breached the Policy by failing to cooperate with Evanston in the defense of the Underlying Lawsuit by testifying falsely under oath." Id. at ¶ 93.  Upon review, only the second of these allegations could be properly construed as a claim for breach of contract.

A breach of contract is defined as "a failure without legal excuse to perform any promise which forms the whole or part of a contract." Heravi v. Gaming Network Sols., 2016 WL 3753156, at *5 (D. Md. July 13, 2016)(internal citations omitted). Under Maryland Law, the elements of a claim for breach of contract include "contractual obligation, breach, and damages." Tucker v. Specialized Loan Servicing, LLC, 83 F. Supp. 3d 635, 655 (D. Md.

2015)(citing Kumar v. Dhanda, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)).

Although framed as a claim for breach of contract, Plaintiff seemingly argues that it would not have agreed to provide coverage to Defendant if not for the alleged submission of Policy Applications containing material misrepresentations and omissions, which happened before the Policy went into effect. Therefore, it appears that this component of Plaintiff's breach of contract claim would be more appropriately construed as a claim for fraudulent inducement, with rescission as an equitable remedy.

Under Maryland law, a plaintiff states a claim for fraudulent inducement by alleging five elements: "(1) that the representation made is false; (2) that its falsity was either known to the [defendant], or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the [plaintiff]; (4) that [the plaintiff] not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that [the plaintiff] would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that [the plaintiff] actually suffered damage directly resulting from such fraudulent misrepresentation." Dynacorp Ltd. v. Aramtel Ltd., 56 A.3d 631, 660 (Md. Ct. Spec. App. 2012)(quoting First Union Nat'l Bank v.

12

Steele Software Sys. Corp., 838 A.2d 404, 426 (Md. Ct. Spec. App. 2003), cert. denied, 846 A.2d 402 (Md. 2004)).

In this case, Plaintiff contends that Mr. Mathabel falsely certified that he was unaware of any potential malpractice claims or suits that could be filed against NMT or its employees when in the 2014 and 2015 Policy Applications.  Plaintiff alleges that Mr. Mathabel knew that this statement was false at the time it was made because he was aware that NMT had fired Mr. Perro for gross misconduct during the Patient's surgery and that the Patient had died.  Evanston allegedly relied upon NMT's answers on the Policy Applications and these answers were "deemed material to [Evanston's] issuance of the Policy."[3]  As a result of its reliance on the Defendant's statements in the Policy Applications, Plaintiff alleges that it was damaged by defending and settling the Underlying Policy on behalf of Defendant.

While strongly suggested in the Amended Complaint, Plaintiff never explicitly alleges that Defendant made the false statements in the Policy Applications "for the purpose of defrauding" Evanston.  Thus, even construed liberally, Plaintiff's Amended Complaint fails to state a claim for fraudulent inducement. Therefore, this component of Plaintiff's breach of contract claim

---

[3] As previously noted during this Court's Pre-Motion Conference with the parties, the issue of the "materiality" of these alleged misrepresentations is an issue of fact that this Court would be unable to resolve on a Motion to Dismiss.

13

will be dismissed without prejudice. The Court, however, will allow leave to file a Second Amended Complaint, to the extent Plaintiff, in good faith, can allege a claim for fraudulent inducement and desires to do so.

Although the first component of Plaintiff's breach of contract cause of action is improperly pleaded and will be dismissed, the Court finds that Plaintiff has properly stated an alternative claim for breach of contract in relation to Defendant's alleged litigation misconduct and failure to cooperate in the Underlying Lawsuit.

### *C. Count III: Unjust Enrichment*

In the Amended Complaint, Plaintiff asserts an alternative claim for unjust enrichment. Specifically, Plaintiff contends that it would be inequitable for NMT to retain the value of the legal defense and $1.1 million settlement expended on NMT's behalf, because NMT's bad faith conduct that should have relieved Evanston of its obligations under the Policy. In turn, Defendant argues that Plaintiff cannot state a claim for unjust enrichment while simultaneously alleging that Evanston was not contractually obligated to defend and settle the Underlying Lawsuit. According to Defendant, Evanston either had a contractual obligation to defend and settle the lawsuit, in which case Defendant was not unjustly enriched, or was not contractually obligated to defend

14

and settle, in which case the payments were made "voluntarily." Under the second scenario, Defendant argues that Plaintiff cannot recoup a payment "voluntarily" made in the absence of a contractual obligation to do so. These arguments are unpersuasive and, to a certain extent, misleading.

In Maryland, a claim of unjust enrichment is established when: "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." Transamerica Premier Life Ins. Co. v. Selman & Co., LLC, 401 F. Supp. 3d 576, 597 (D. Md. 2019). Notably, "a plaintiff is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." Chubb & Son v. C & C Complete Servs., LLC, 919 F. Supp. 2d 666, 678 (D. Md. 2013)(internal citations omitted).

Plaintiff's alternative claim for unjust enrichment is permissible precisely because Plaintiff contends that it made the payments on NMT's behalf in the absence of a contractual obligation to do so. Unjust enrichment is "a quasi-contractual cause of action that is a remedy 'to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services

15

provided.'" Transamerica, 401 F. Supp. 3d at 597 (quoting Cty. Comm'rs of Caroline Cty. v. Roland Dashiell & Sons, Inc., 747 A.2d 600, 606 (Md. 2000)).

Furthermore, Evanston alleges that its payment of the settlement on behalf of NMT was not "voluntary," because Evanston was legally (even if not contractually) obligated to settle the case within policy limits. By the time that Plaintiff disclaimed an obligation to defend and settle the Underlying Lawsuit (when Evanston learned of the allegedly false statements in the Policy Applications), Evanston had already agreed to provide a defense to NMT and had not been relieved of that duty at the time of settlement (even though it filed this case seeking such a declaration). As such, Evanston could have been held liable if a jury had returned a verdict in excess of policy limits. See Mesmer v. Maryland Auto. Ins. Fund, 725 A.2d 1053, 1064 (Md. 1999)(noting that "when a liability insurer erroneously takes the position that it has no contractual obligation with respect to a particular claim, and refuses to undertake any defense against the claim, it is liable only for breach of contract. The tort action based upon a liability insurer's bad faith failure to settle a claim within policy limits can arise only if the insurer undertakes to provide a defense against the claim."). To that point, Plaintiff alleges that Defendant did, indeed, threaten to hold Evanston liable for any judgment in excess of policy limits if it failed to settle the

Underlying Lawsuit. See Am. Compl., at ¶¶ 20-31.  Thus, any argument that Plaintiff paid the settlement "voluntarily" is belied by Evanston's allegations otherwise, which this Court must accept as true on a motion to dismiss.

### D. Count IV – Subrogation

Finally, Plaintiff argues that it has a right to recover from Defendant through a subrogation clause in the Policy that permits recovery "in respect of any Claim brought about or contributed to by an intentional, willful, dishonest, fraudulent act or omission of such Insured or by an act or omission of such Insured that constitutes a willful violation of any statute or regulation." Common Policy Conditions [Dkt. No. 51-7], at ¶ G.  In the Motion to Dismiss, Defendant argues that the concept of subrogation is inapplicable in the context of this case.  On this point, the Court agrees with Defendant.

Generally, subrogation is defined as the "substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party." US Airways, Inc. v. McCutchen, 569 U.S. 88, 98 (2013)(citing sources indicating that, generally, subrogation involves the substitution of the insurer in place of the rights of the insured).

17

Under the circumstances, it appears that subrogation is inapplicable to this case. As noted by Defendant, "[i]t has long been recognized, as a legal principle, that an insurer may not recover from its insured, or a co-insured, as subrogee." Rausch v. Allstate Ins. Co., 882 A.2d 801, 807 (Md. 2005)(citing Wager v. Providence Ins. Co., 150 U.S. 99, 110 (1893). In Rausch, the Maryland Court of Appeals held that "any other construction would be absurd—because, as subrogee, the insurer stands in the shoes of the insured, it would essentially involve the insured suing himself to recover damages he sustained by his own conduct." Rausch, 882 A.2d at 807.

Although the Subrogation Clause in the Policy would seem to permit Evanston to seek recovery from Defendant under certain circumstances, that right to recovery appears limited to situations in which the insured has recouped costs from a third-party (presumably an excess liability insurer). In this case, Plaintiff has not alleged that Defendant has any right to a recover from a third-party and, therefore, subrogation is inapplicable. Accordingly, the subrogation claim will be dismissed and, absent the involvement of a third-party, any attempt to replead this claim would be futile.

**IV.   CONCLUSION**

For the aforementioned reasons, Defendant's motion is denied, in part, as it pertains to Plaintiff's claims for a declaratory

judgment, unjust enrichment, and breach of contract by failing to cooperate in the defense of the Underlying Lawsuit.  The Court, however, will grant Defendant's motion to dismiss as it pertains to the subrogation claim and Plaintiff's claim that Defendant breached the Policy by providing false statements on the Policy Applications.  To the extent Plaintiff believes it can, in good faith, cure the deficiencies in the improperly pleaded breach of contract claim, Plaintiff will be permitted thirty days to file a Second Amended Complaint. An appropriate Order shall issue on this date.

DATED: June 23, 2020

                                                <u>s/Renée Marie Bumb</u>
                                                RENÉE MARIE BUMB
                                                UNITED STATES DISTRICT JUDGE