[Docket No. 66]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>NEUROMONITORING TECHNOLOGIES, INC., et al.,<br><br>        Defendants. | Civil No. 18-11497 (RMB/KMW)<br><br>**OPINION** |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motion to Dismiss brought by Defendant Neuromonitoring Technologies, Inc. ("Defendant"). [Docket No. 66.] For the reasons expressed below, the Court will deny Defendant's Motion.

I.    BACKGROUND

This is the third Motion to Dismiss to come before the Court in this case. [See Docket Nos. 17, 52.] The Court's Opinions in relation to the first two Motions lay out the detailed factual background of this case. [Docket Nos. 30, 61.] Because the parties and the Court are familiar with the facts of this case, the Court incorporates the factual discussion included in those two Opinions here and will only briefly address the facts that are relevant to the present Motion.

This case stems from the death of Margaret Mary Niedzwiadek (the "Patient") as the result of an October 2013 surgical procedure. During that procedure, Robert Perro, an employee of Defendant, allegedly failed to communicate vital information to the surgeons operating on the Patient. This allegedly led to the death of the Patient in December 2013. Plaintiff Evanston Insurance Company ("Plaintiff"), as the insurer of Defendant, assisted in the defense of a state court lawsuit (the "Underlying Lawsuit") and ultimately paid a $1.1 million settlement. Plaintiff brought this lawsuit prior to agreeing to settle the Underlying Lawsuit "to determine the parties' rights and obligations under" the insurance policy (the "Policy").

Relevant to the present Motion to Dismiss, Plaintiff contends that Defendant's President Richard Mathabel

> falsely certified that he was unaware of any potential malpractice claims or suits that could be filed against [Defendant] or its employees . . . in the 2014 and 2015 Policy Applications. Plaintiff alleges that Mr. Mathabel knew that this statement was false at the time it was made because he was aware that [Defendant] had fired Mr. Perro for gross misconduct during the Patient's surgery and that the Patient had died. [Plaintiff] allegedly relied upon [Defendant's] answers on the Policy Applications and those answers were "deemed material to [Defendant's] issuance of the Policy." As a result of its reliance on the Defendant's statements in the Policy Applications, Plaintiff alleges that it was damaged by defending and settling the Underlying Policy on behalf of Defendant.

[Docket No. 61, at 13.]

On June 23, 2020, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. [Docket Nos. 61-62.] In pertinent part, the Court interpreted one of Plaintiff's breach of contract claims to actually be a claim for fraudulent inducement. [Docket No. 61, at 12-14.] It held that Plaintiff had not adequately pled the claim, specifically because "Plaintiff never explicitly allege[d] that Defendant made . . . false statements . . . 'for the purpose of defrauding'" Plaintiff. [Id. at 13.] Therefore, the Court dismissed the claim, but it granted Plaintiff thirty days "to file a Second Amended Complaint, to the extent Plaintiff believes it can, in good faith, cure the deficiencies in the improperly pleaded breach of contract claim."[1] [Docket No. 62, at 2.]

On July 22, 2020, Plaintiff timely filed its Second Amended Complaint (the "Complaint"). [Docket No. 63.] In relevant part, the Complaint alleges a claim of "Fraudulent Inducement/Misrepresentation" as Count IV, based generally on the allegations outlined above. [Id., ¶¶ 98-105.] On September 4, 2020, Defendant filed the pending Motion to Dismiss, which only seeks

---

[1] Additionally, the Court denied the Motion "as it pertain[ed] to Plaintiff's claims for a declaratory judgment (Count I), breach of contract by failing to cooperate in the defense of the Underlying Lawsuit (Count II), and unjust enrichment (Count III)." [Docket No. 62, at 1.] It granted the Motion "as it pertain[ed] to Plaintiff's claim that Defendant breached the Policy by providing false statement on the Policy Applications (Count II) and the subrogation claims (Count IV)." [Id. at 1-2.]

the dismissal of Count IV. [Docket No. 66.] Plaintiff timely filed its response in opposition [Docket No. 67], and Defendant timely replied [Docket No. 68].

## II.  JURISDICTION

As addressed in its previous Opinions, the Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2001(a). [See Docket No. 30.]

## III. STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355

4

U.S. 41, 47 (1957); Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the

5

'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**IV. ANALYSIS**

Defendant argues in its Motion to Dismiss that the claim for fraudulent inducement should be dismissed because the Complaint does not satisfactorily plead each of the elements of fraudulent inducement. [See Docket No. 66-2, at 8.] Defendant also argues that the Complaint does not meet the heightened pleading standards of FEDERAL RULE OF CIVIL PROCEDURE 9(b). [See id.] Finally, Defendant argues that Plaintiff cannot seek monetary damages because it agreed to pay the $1.1 million settlement after it learned of Defendant's alleged fraud.[2] [See Docket No. 68, at 5-8.] The Court will address each of these arguments in turn.

---

[2] Initially, Defendant's Motion argued that Plaintiff did not act with adequate diligence in pursuing this claim. [See Docket No. 66-2, at 8.] However, Defendant abandons this argument in its Reply brief. [Docket No. 68, at 5.]

6

### A. Does Plaintiff Adequately Plead the Elements of Fraudulent Inducement?

As this Court wrote in its previous Opinion, a fraudulent inducement claim has five elements under Maryland law.[3] The plaintiff must show

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

CapitalSource Fin., LLC v. Delco Oil, Inc., 608 F. Supp. 2d 655, 666 (D. Md. 2009) (quoting Nails v. S&R, Inc., 639 A.2d 660, 668 (Md. 1994)). "In order to recover for fraud, 'the misrepresentation must be made with the deliberate intent to deceive.'" Sinclair Broad. Grp., Inc. v. Colour Basis, LLC, Civil No. CCB-14-2614, 2016 U.S. Dist. LEXIS 84154, at *33 (D. Md. June 29, 2016) (quoting Sass v. Andrew, 832 A.2d 247, 260 (Md. Ct. Spec. App. 2003)). Fraudulent intent can be inferred from circumstantial evidence. First Union Nat'l Bank v. Steele Software Sys. Corp., 838 A.2d 404, 440 (Md. Ct. Spec. App. 2003).

In its Motion, Defendant argues that Plaintiff does not adequately plead the third element — the intent to defraud — or

---

[3] The Court previously determined that Maryland law applies to the substantive issues in this case. [Docket No. 61, at 6-7.]

7

the fourth element — reliance. [Docket No. 66-2, at 11-16.] The Court finds that, considering the allegations in the light most favorable to Plaintiff, the Complaint adequately alleges the third element. The Complaint alleges that Defendant was responsible for a botched surgery that it knew resulted in death; that it fired the responsible party for "gross misconduct" the day after the surgery; that it applied for insurance coverage from Plaintiff after the surgery and death; and, in spite of those circumstances, that it indicated on the insurance application that it was not aware of any circumstances that might result in a malpractice claim or suit being made against it. [See, e.g., Docket No. 63, ¶¶ 74-84.] Confronted with these allegations, a jury could reasonably find that, by answering how it did on the application, Defendant intended to defraud Plaintiff into providing insurance coverage that it otherwise would not have provided. Therefore, the Court finds that Plaintiff has adequately pled the third element of its fraudulent inducement claim.

Turning to the fourth element — reliance — the Court also finds Defendant's arguments unconvincing. While Plaintiff does not allege precisely what it would have done differently if Defendant had not allegedly lied on the application, it can be reasonably inferred based on the Complaint that Plaintiff would have acted differently. Plaintiff alleges that the application itself states that its issuance of a policy depended on the truthfulness of the

8

application. [Docket No. 63, ¶¶ 45, 102, 104.] It alleges that, but for the misrepresentations, it would not have undertaken the responsibility of defending and settling the Underlying Lawsuit. [Id., ¶ 105.] Moreover, a reasonable jury could justifiably conclude that Plaintiff's purpose for requiring an insurance application is to determine whether or not to offer a policy to the applicant. Therefore, it would be reasonable to conclude that any misrepresentation in the application — especially one directly relating to the risks that the insurer would be undertaking if it provided coverage — would be relied upon by the insurer in deciding whether or not to provide coverage. Therefore, considering the allegations in the light most favorable to Plaintiff and making all reasonable inferences therefrom, the Court finds that Plaintiff has also adequately pled the fourth element of its fraudulent inducement claim.

    **B.   Does the Complaint Satisfy Rule 9(b)?**

Next, Defendant argues that the Complaint fails to satisfy Rule 9(b). Under Rule 9(b), a complaint that alleges fraud, such as here, "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Conversely, allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. Pleading fraud with particularity can be accomplished by pleading "the date, time, and place" of the fraud or otherwise injecting "precision or some

9

measure of substantiation into the allegations." Slimm v. Bank of Am. Corp., CIV. 12-5846 NLH/JS, 2013 U.S. Dist. LEXIS 62849, at *13 (D.N.J. May 2, 2013) (citing Frederico v. Home Depot, 507 F. 3d 188, 200 (3d Cir. 2007)). In so doing, the plaintiff must state the circumstances of the fraud with "sufficient particularity to place the defendant on notice of the precise misconduct with which [it] is charged." Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004). This can be achieved by including in the Complaint "all of the essential factual background that would accompany 'the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997)).

Here, Plaintiff has satisfied Rule 9(b)'s requirements. There can be no question that Defendant is "on notice of the precise misconduct with which [it] is charged." See Lum, 361 F.3d at 223-24. As Plaintiff notes in its brief in opposition, the Complaint adequately illustrates the who, what, when, where, and how of the alleged fraud. [Docket No. 67, at 14-15.] The "who" is Defendant and specifically Mr. Mathabel. [See Docket No. 63, ¶¶ 36-37, 39, 41-42, 46, 84, 99.] The "what" is Defendant's alleged representation that it was unaware of circumstances that might lead to a lawsuit against it, despite allegedly being aware of the

Patient's botched surgery and ultimate death and of Mr. Perro's gross misconduct during the botched surgery. [See id., ¶¶ 43-46, 75-79, 81-86, 99-100.] The "when" is May 4, 2015, when Defendant filed the application. [See id., ¶ 41.] The "where" is on the application, which was completed by Defendant in Glenwood, Maryland. [See id., ¶¶ 6, 42, 99.] Finally, the "how" is by answering "no" to the relevant question on the application in spite of the circumstances discussed above. [See id., ¶¶ 43-46, 75-79, 81-86, 99-105.] Therefore, Plaintiff's Complaint satisfies Rule 9(b).

### C.  Can Plaintiff Seek Damages?

Finally, Defendant argues that Plaintiff cannot seek damages in relation to the fraudulent inducement claim because Plaintiff "voluntarily" settled the Underlying Lawsuit after it learned about the alleged fraud. [See Docket No. 66-2, at 18-19; Docket No. 68, at 6-8.] Plaintiff counters that it may recover damages because it only learned of the fraud after it began performance of the contract by undertaking Defendant's defense in the Underlying Lawsuit. [See Docket No. 67, at 11-13].

The Court already addressed Defendant's argument in its previous Opinion. The Court noted,

> By the time that Plaintiff disclaimed an obligation to defend and settle the Underlying Lawsuit (when [Plaintiff] learned of the allegedly false statements in the Policy Applications), [Plaintiff] had already agreed to provide a defense to NMT and had not been relieved of

11

>that duty at the time of settlement (even though it filed this case seeking such a declaration).

[Docket No. 61, at 16.] The Court further found that, "any argument that Plaintiff paid the settlement 'voluntarily' is belied by [Plaintiff's] allegations otherwise, which this Court must accept as true on a motion to dismiss." [Id. at 17.] Therefore, the Court finds that monetary damages are available to Plaintiff if it succeeds on its fraudulent inducement claim.

**V.  CONCLUSION**

For the reasons expressed above, the Court will deny Defendant's Motion to Dismiss. An accompanying Order shall issue.

March 17, 2021
Date

RENÉE MARIE BUMB
United States District Judge