# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

EVANSTON INSURANCE COMPANY,

      *Plaintiff/Counterclaim Defendant*,

     v.

NEUROMONITORING TECHS., INC., et al.

      *Defendant/Counterclaim Plaintiff*

_____

Civil No. 1:18-cv-11497 (CPO)

**OPINION**

NEUROMONITORING TECHS., INC.,

      *Third-Party Plaintiff*,

     v.

MARKEL SERVICE INCORPORATED,

      *Third-Party Defendant*

_____

## APPEARNCES

Dennis Chow
Matthew D. Vodzak
FOWLER HIRTZEL MCNULTY & SPAULDING, LLP
Three Logan Square
1717 Arch Street, Suite 1310
Philadelphia, PA 19103

     *On behalf of Counterclaim and Third-Party Plaintiff.*

Joseph Schramm, III, Esq.
FISHERBROYLES, LLP
100 Overlook Center, Second Floor
Princeton, NJ 08540

Sean M. Hanifin, Esq. (pro hac vice)
Jason C. Reichlyn, Esq. (pro hac vice)
DYKEMA GOSSETT PLLC
1301 K Street NW, Suite 1100 West
Washington, D.C. 20005

*On behalf of Counterclaim and Third-Party Defendants.*

**O'HEARN, District Judge.**

## INTRODUCTION

Pending before the Court is Evanston Insurance Company and Markel Service, Inc.'s ("MSI") Consolidated Motion to Dismiss Neuromonitoring Technologies, Inc.'s ("NMT") Counterclaim (ECF. No. 73) and Third-Party Complaint (ECF. No. 74) under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 85).

NMT's Counterclaim against Evanston asserts claims for declaratory judgment (Counts I-III), breach of contract (Count IV), breach of the duty of good faith and fair dealing (Count V),[1] bad faith and breach of fiduciary duty (Count VI), fraud (Count VII), negligent representation (Count VIII), fraudulent inducement/misrepresentation (Count IX), and negligence (Count X). (ECF No. 73).

NMT's Third-Party Complaint against MSI asserts claims for fraud (Count I), negligent representation (Count II), fraudulent inducement/misrepresentation (Count III), negligence (Count IV), and contribution and indemnity (Count V). (ECF No. 74).

---

[1] Because NMT acquiesces to dismissal of Count V (breach of the duty of good faith and fair dealing), (Pla. Opp. Br., ECF No. 89-1 at 15), the Court dismisses Count V of NMT's Counterclaim with prejudice.

Evanston seeks to dismiss Counts IV, V, VI, VII, and IX under F.R.C.P. 12(b)(6).[2] (ECF No. 85). MSI seeks to dismiss all Counts of the Third-Party Complaint under F.R.C.P. 12(b)(6). (ECF No. 85).

For the following reasons, Evanston and MSI's consolidated Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.      FACTUAL AND PROCEDURAL HISTORY

This is the fourth Motion to Dismiss to come before the Court in this matter.[3] (ECF Nos. 17, 52, 66). The Court's Opinions in relation to the first three Motions lay out the detailed factual background of this case. (ECF Nos. 30, 61, 69). The Court incorporates the factual discussion included in those prior three Opinions here and will only briefly address the facts that are relevant to the present motion.

This case stems from the death of Margaret Mary Niedzwiadek (the "Patient") after an October 2013 surgical procedure. (ECF No. 69 at 2). During that procedure, Robert Perro, an employee of NMT, failed to communicate vital information to the surgeons operating on the Patient. (ECF No. 69 at 2). This allegedly led to the death of the Patient in December 2013. (ECF No. 69 at 2). Evanston, as the insurer of NMT, provided a defense of the medical malpractice state court lawsuit[4] (the "Underlying Lawsuit"). (ECF No. 69 at 2). While the Underlying Lawsuit was pending and it was providing a defense to NMT, Evanston instituted suit in this Court seeking declaratory relief against NMT "to determine the parties' rights and obligations under" the

---

[2]  Evanston does not seek dismissal of Counts I–III (declaratory judgement), Count VIII (negligent representation), and Count X (negligence).
[3]  NMT was the movant on the first three Motions to Dismiss whereas Evanston and MSI are the movants on this Motion.
[4]  *David J. Niedzwiadek, et al. v. Timothy J. Droney, M.D., et al.*, Superior Court of New Jersey, Law Division, Atlantic County, No. L-000094-16.

insurance policy due to NMT's alleged misrepresentations and omissions on the policy application.[5] (ECF No. 1, ¶ 1). Evanston ultimately obtained NMT's consent to settle the Underlying Lawsuit and paid a $1.1 million settlement on behalf of NMT. (ECF No. 73, ¶ 94). Subsequently, Evanston amended its Complaint in this action to seek reimbursement of the full settlement amount from NMT.  (ECF Nos. 51, 63).

Relevant to the pending motion, NMT raised several Counterclaims against Evanston in its Answer to the Amended Complaint, (ECF No. 73), and filed a Third-Party Complaint against MSI, Evanston's insurance claims administrator. (ECF No. 74). Central to NMT's Counterclaim and Third-Party Complaint is an allegation that Evanston and MSI exercised a "bait and switch" by obtaining NMT's consent to settle the Underlying Lawsuit only to turn around and seek reimbursement of the same settlement in this Court. (ECF No. 73, ¶ 146; ECF No. 74, ¶ 79). NMT further alleges that Evanston breached its policy agreement by failing to meet its "duty to defend" NMT and Perro in the Underlying Lawsuit. (ECF. No. 73, ¶ 133).

## II.    <u>JURISDICTION</u>

As addressed in its previous Opinions, the Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2001(a). (ECF No. 30).

---

[5]  Evanston alleges that NMT was responsible for a botched surgery that it knew resulted in death; that it fired the responsible party for "gross misconduct" the day after the surgery; that it applied for insurance coverage from Evanston after the surgery and death; and, in spite of those circumstances, that it indicated on the insurance application that it was not aware of any circumstances that might result in a malpractice claim or suit being filed against NMT. (ECF No. 63, ¶¶ 74-84).

### III.   LEGAL STANDARDS

#### A.  Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also*

*Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(d).

## IV.   DISCUSSION

### A.  Choice of Law

This Court previously determined that Maryland law applies to this case because NMT, a Maryland company, contracted and bought the Evanston insurance policy in Maryland. (ECF Nos. 61, 69). NMT now argues that the Court should apply New Jersey law to the Counterclaims and Third-Party Complaint. (ECF No. 89-1 at 7). The Court finds NMT's position unavailing.

When a choice-of law question exists in a diversity of citizenship action, "a district court must apply the choice-of-law rules of the state in which it sits in order to determine which state's

law applies." *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The Supreme Court of New Jersey has held that "because the law of the place of contract 'generally comport[s] with the reasonable expectations of the parties concerning the principal situs of the insured risk,' that forum's law should be applied 'unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.'" *Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 629 A.2d 885, 888 (N.J. 1993).

Further, "[b]efore a choice of law question arises . . . there must actually be a conflict between the potentially applicable bodies of law." *Lucker Mfg. v. Home Ins. Co*., 23 F.3d 808, 813 (3d Cir. 1994).  Neither NMT (ECF No. 89-1) nor this Court can identify a conflict between New Jersey and Maryland law on the claims which are the subject of this Motion.[6] Accordingly, this Court finds that no actual conflict exists between Maryland and New Jersey law as relevant to the present motions and will continue to apply Maryland law as originally decided.[7]

---

[6]  The Court finds no difference between New Jersey and Maryland law regarding the tort claims at issue. NMT acknowledges that "New Jersey applies a similar standard" to Maryland on its bad faith and breach of fiduciary duty claim. (ECF No. 89-1 at 17). NMT further acknowledges that a fraud claim under New Jersey law "has the same five elements" as one under Maryland law. (ECF No. 89-1 at 19). Similarly, with respect to the Third-Party Complaint, neither New Jersey nor Maryland courts have addressed the precise issue of whether a claim adjuster owes a duty of care to an insured. (ECF No. 89-1 at 25). Thus, this is a false conflict. *See Lucker Mfg.*, 23 F.3d at 813 ("Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue.").

[7]  Even if there was an actual conflict between New Jersey and Maryland law on the tort claims, the Second Restatement's most significant relationship test further prescribes Maryland law to NMT's Counterclaims and Third-Party Complaint's tort causes of action. *See P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). This is because NMT does not sufficiently allege that it "was injured in New Jersey." (ECF No. 89-1 at 8). Although the Underlying Lawsuit was heard and settled in New Jersey, the alleged tort injuries caused to NMT, a Maryland citizen, were sustained in Maryland. The Court accepts that the remaining factors provided in the Restatement § 145 further dictate that Maryland has a more significant relationship with the present matter than does New Jersey. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(b)–(d) (1988).

## B.  NMT's Counterclaim Counts IV, VI, VII, and IX

For the following reasons, the Court grants in part and denies in part Evanston's Motion to Dismiss NMT's Counterclaims pursuant to Rule 12(b)(6) for failure to state a claim.

### 1.  Count IV (Breach of Contract)

NMT asserts that Evanston breached its insurance policy with NMT by (i) "failing to continuously defend NMT and Perro," and (ii) appointing one law firm to represent NMT and Perro "despite a clear conflict of interest." (ECF No. 73, ¶¶ 138, 140). Evanston replies that none of its actions constitute a material breach of the policy. (ECF No. 85 at 6–9). For the following reasons, the Court denies Evanston's motion to dismiss Count IV.

"Under Maryland law, the elements of a breach of contract are 1) a contractual obligation and 2) a material breach of that obligation." *Chubb & Son v. C & C Complete Services, LLC*, 919 F. Supp. 2d 666, 678 (D. Md. 2013) (citing *Cowan Systems LLC v. Ocean Dreams Transp., Inc.*, No. 11-00366, 2012 WL 4514582, at *3 (D. Md. Sept. 27, 2012)). "A breach is material 'if it affects the purpose of the contract in an important or vital way.'" *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (quoting *Sachs v. Regal Sav. Bank, FSB*, 705 A.2d 1, 4 (Md. Ct. Spec. App. 1999)). "Whether a breach of contract is material is normally a question of fact, 'unless the issue is so clear that it may be decided as a matter of law.'" *Whiting-Turner Contracting Co. v. Capstone Dev. Corp.*, No. 12-03730, 2013 WL 5423953, at *8 (D. Md. Sept. 26, 2013) (quoting *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 7 A.3d 643, 656–57 (Md. Ct. Spec. App. 2010)).

The issue is not so clear here. NMT first alleges that Evanston breached the insurance policy by failing to "continuously defend" NMT in the Underlying Lawsuit. (ECF No. 73, ¶ 138). This allegation appears to be predicated on an eleven-day period between NMT's defense

counsel's withdrawal and confirmation of replacement defense counsel's retention in the Underlying Lawsuit.[8] NMT further alleges that it "expend[ed] its own fees to protect itself in the [Underlying Lawsuit] and . . . suffered resulting damages" because of the brief gap in legal representation. (ECF No. 73, ¶¶ 141–42). While doubtful that such a brief gap in representation was in fact material, at this point, this Court cannot decide as a matter of law whether this conduct amounted to a material breach that affected the purpose of the insurance policy in an important or vital way.

Similarly, this Court cannot decide as a matter of law whether Evanston materially breached the insurance policy by appointing one counsel to defend NMT and Perro in the Underlying Lawsuit despite a "clear conflict of interest."  (ECF No. 73, ¶ 140). While a joint representation may not "automatically create a conflict," whether such a conflict exists or causes an insured to "suffer[] . . . harm," *Fox v. Am. Alt. Ins. Corp.*, 757 F.3d 680, 686 (7th Cir. 2014), is a question better suited for summary judgment or trial. At this juncture, NMT has satisfied the requirements of notice pleading by alleging that the "Evanston-appointed defense counsel's advice regarding Mathabel's testimony was colored by the clear ethical conflict between her two clients", (ECF No. 73, ¶ 55), and that NMT consequently "suffered actual and consequential damages." (ECF No. 73, ¶ 142).

---

[8] On a motion to dismiss, the Court may "consider and take judicial notice of matters of public record." *Genova*, 193 F. Supp. 3d at 364 (citing *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007)). "Such matters of public record may include prior judicial proceedings." *Id.* (citing *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)). Thus, the Court will consider the underlying court's order and replacement attorney's entry of appearance. *See Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir. 2008) (quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196)).

Because NMT has pled sufficient allegations as to the brief legal representation gap and alleged conflict of interest that could singly or in combination be deemed a material breach, the Court denies Evanston's motion to dismiss Count IV of the Counterclaim.

### 2.   Count VI (Bad Faith and Breach of Fiduciary Duty)

NMT next asserts that Evanston acted in bad faith and breached its fiduciary duty to NMT by obtaining NMT's consent to settle the Underlying Lawsuit only to subsequently seek reimbursement from NMT for the same. Evanston replies that it cannot be held liable for its conduct as a matter of law because it settled the Underlying Lawsuit within policy limits. The Court agrees that Maryland law forecloses Count VI of NMT's Counterclaim.

Under Maryland law, "to establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Plank v. Cherneski*, 231 A.3d 436, 466 (Md. 2020).

Further, "[i]n order to plead a bad faith claim, a plaintiff must allege that the insurance company 'refus[ed] to settle a claim *within policy limits*.'" *Cook v. Nationwide Ins. Co*., 962 F. Supp. 2d 807, 821 (D. Md. 2013) (emphasis and second alteration in original) (quoting *Fireman's Fund Ins. Co. v. Continental Ins. Co*., 519 A.2d 202, 204 (Md. 1987)); *see also Hughes v. Progressive Direct Ins. Co.*, No. 12–01555, 2012 WL 4480726, at *2 (D. Md. Sept. 27, 2012) ("In Maryland, a third-party insurer may be liable for 'bad faith' in the insurer's dealings with its insurer's dealings with its insured when the insurer refuses an opportunity to settle a claim against the insured within policy limits.").

Neither party disputes that Evanston settled the Underlying Lawsuit on behalf of NMT well within the policy's $2 million limit. (ECF No. 85; ECF No. 73, ¶ 170). Accordingly, NMT's claim

of bad faith and breach of fiduciary duty[9] fails to state a claim as a matter of law and the Court

dismisses Count VI of the Counterclaim with prejudice.[10]

### 3.   Counts VII and IX (Fraud and Fraudulent Inducement/Misrepresentation)

The Court turns next to Evanston's argument that NMT's fraud claims[11] fail to identify a

false representation made by Evanston for the purpose of defrauding NMT or reasonable reliance

on the same. (Def. Br., ECF No. 13–15). The Court agrees that NMT has failed to present sufficient

factual allegations to withstand dismissal of its fraudulent misrepresentation or inducement claim.

Under Maryland law, a plaintiff states a claim for fraudulent inducement by alleging five

elements: "(1) that the representation made is false; (2) that its falsity was either known to the

[defendant], or the misrepresentation was made with such a reckless indifference to truth as to be

equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the [plaintiff];

(4) that [the plaintiff] not only relied upon the misrepresentation, but had a right to rely upon it in

the full belief of its truth, and that [the plaintiff] would not have done the thing from which the

---

[9]  A fiduciary relationship existed as between NMT and Evanston when Evanston undertook NMT's defense of the Underlying Lawsuit. *See McCauley v. Suls*, 716 A.2d 1129, 1133 (Md. 1998) ("The insurer . . . owes a duty to the insured to attempt to settle the claim within the limits of the policy since the insured has surrendered the right to do so itself."). However, this fiduciary duty ended when the Underlying Lawsuit was settled. *See id*. at 1134 ("insurance company owes no fiduciary duty in a first-party claim.").

[10]  To the extent NMT alleges that Evanston breached its fiduciary duty by violating its duty to defend, an alleged breach of the duty to defend gives rise only to a breach of contract action, not a tort action. *See Vigilant Ins. Co. v. Luppino*, 723 A.2d 14, 17 (Md. 1999) ("An insurer's obligation to defend is contractual, and, therefore, a cause of action for breach of the duty to defend sounds in contract."). Finally, to the extent NMT alleges that Evanston breached its fiduciary duty by exercising a "bait and switch," the claim fails because the fiduciary relationship ended when the Underlying Lawsuit was settled. *McCauley,* 716 A.2d at 1134.

[11]  Fraud and fraudulent inducement are duplicative under Maryland law. *See Sass v. Andrew*, 832 A.2d 247, 262 (Md. Ct. Spec. App. 2003) ("Under Maryland law, fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement."). Because NMT principally relies on a fraudulent misrepresentation/inducement theory of fraud, (ECF No. 89-1), this Court will combine Counts VII and IX as a single Count of fraudulent misrepresentation/inducement for discussion.

injury resulted had not such misrepresentation been made; and (5) that [the plaintiff] actually suffered damage directly resulting from such fraudulent misrepresentation." *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 660 (Md. Ct. Spec. App. 2012) (quoting *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 838 A.2d 404, 426 (Md. Ct. Spec. App. 2003), *cert. denied*, 846 A.2d 402 (Md. 2004)).

Additionally, under Rule 9(b), a complaint that alleges fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pleading fraud with particularity can be accomplished by pleading "the date, time, and place" of the fraud or otherwise injecting "precision or some measure of substantiation into the allegations." *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *13 (D.N.J. May 2, 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

As to false representation, NMT contends that "Evanston falsely alleged that it would settle the *Niedzwiadek* action on NMT's behalf, even though it had no intention of doing so." (ECF No. 89-1 at 20). Yet, the Underlying Lawsuit was indeed settled. (ECF No. 73, ¶ 170). NMT appears to implicitly argue that Evanston represented that it would settle the Underlying Lawsuit *and* dismiss its action in this Court. However, NMT fails to allege any facts indicating that Evanston promised or otherwise intended to release NMT from its claims in this Court in exchange for NMT's consent to settle the Underlying Lawsuit. NMT further fails to identify any allegations demonstrating that Evanston made a false representation to NMT in connection with the settlement. To the extent NMT alleges fraud by omission it "fails to specify what was [Evanston's] misstatement that concealed or improperly omitted this information" and whether Evanston was "aware of the falsity of the statements at the time they were made." *Harper v. Manufacturer's & Trust Co.*, No. 10-00593, 2011 WL 768845, at *3 (D.Md. 2011) (granting motion to dismiss

fraudulent inducement claim for failure to state a claim). NMT's allegations of fraudulent inducement cannot meet Rule 9(b)'s heightened pleading standard. Accordingly, the Court dismisses Counts VII and IX of NMT's Counterclaim without prejudice. If, in good faith, NMT believes it can sufficiently allege such facts, it will be granted leave to amend within thirty days.

### C. NMT's Third-Party Complaint

NMT seeks to hold MSI liable in tort for acts taken as Evanston's claim service manager and acts taken "on its own behalf." (ECF No. 74, ¶ 2). MSI argues that it is a known agent of Evanston and is therefore insulated from liability. (ECF No. 85). The Court finds that MSI is insulated from liability and accordingly grants its motion to dismiss the Third-Party Complaint.

Although neither Maryland nor New Jersey courts appear to have addressed the precise issue of whether an insurance claim administrator can be held liable in tort to an insured for an alleged mishandling of a claim, several other courts have and the majority of those courts have held that an insurance claim administrator is insulated from such liability. *See, e.g.*, *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 640 (7th Cir. 2015) ("a claims adjuster does not owe a duty of care to the insured" under Indiana law); *Grubbs v. Westfield Ins. Co.*, 430 F. Supp. 2d 563, 568-69 (N.D. W. Va. 2006) ("while insurance companies owe a duty of good faith and fair dealing to their insureds, agents and adjusters owe their allegiance solely to the insurance company" under West Virginia law); *Bass v. Cal. Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991) ("adjuster does not owe the insured a fiduciary duty nor a duty to act in good faith."); *Hamill v. Pawtucket Mut. Ins. Co.*, 892 A.2d 226, 230 (Vt. 2005) ("allowing the insured to sue the independent adjuster in tort for economic losses allegedly caused by mishandled claims is both unnecessary and contrary to the law of agency."); *but see Pohto v. Allstate Insurance Company*, No. 6:10-cv-02654, 2011 WL 2670000, at *2 (D.S.C. July 7, 2011) (holding that a claims adjuster "may be held individually

liable for torts committed within the scope of their employment."); *McCarter v. Progressive Gulf Ins. Co.*, No. 11–2646, 2011 WL 6130769, at *4 (E.D.La. Dec. 7, 2011) (finding that a claims adjuster may be held liable to the insured "depending on the 'relative education of the parties, the diligence of the claimant in seeking the facts, the actual or apparent authority of the adjuster, the content of his promises to the claimants, misrepresentation or fraud.'") (quoting *Pellerin v. Cashway Pharmacy of Franklin, Inc.*, 396 So.2d 371, 373 (La. App. 1 Cir.1981)).

Absent sufficient guidance from Maryland or New Jersey courts, the Court concurs with the majority view. The Court finds no independent duty on the part of claims service administrators that would subject them to common-law tort actions by insureds who have suffered purely economic loss because of allegedly mishandled claims. As other courts have recognized, such a duty would create "conflicting loyalties," *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 84 Cal. Rptr. 2d 799, 802 (Cal. Ct. App. 1999), result in a "redundancy unjustified by the inevitable costs that eventually would be passed on to insureds," *Hamill*, 892 A.2d at 230-31, and impose a duty based on a relationship "sufficiently attenuated by the insurer's control over the adjuster." *Meineke v. GAB Bus. Servs.*, 991 P.2d 267, 270 (Ariz. Ct. App. 1999). Accordingly, NMT's Third-Party Complaint fails to state a claim upon which relief can be granted as a matter of law and will be dismissed with prejudice.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Evanston and MSI's Consolidated Motion to Dismiss, (ECF No. 85) pursuant to Rule 12(b)(6) for Failure to State a Claim.

Counterclaim Counts V (breach of the duty of good faith and fair dealing) and VI (bad faith and breach of fiduciary duty) are **DISMISSED WITH PREJUDICE**, and Counterclaim Counts

14

VII (fraud), and IX (fraudulent inducement/misrepresentation) are **DISMISSED WITHOUT PREJUDICE**. The Third-Party Complaint is **DISMISSED WITH PREJUDICE**. The Consolidated Motion is **DENIED** with respect to Count IV (breach of contract). An appropriate Order accompanies this Opinion.

_/s/ Christine P. O'Hearn_
**CHRISTINE P. O'HEARN**
**United States District Judge**